The People of Puerto Rico, Plaintiff and Appellee, *v.* José Nicolás Millán, Defendant and Appellant. Same *v.* Same. Same *v.* Same.

Nos. 10894, 10895, and 10896. Argued June 6, 1945.—Decided June 7, 1946.

R. *Rivera Zayas*, G. *Rivera Cestero*, and E. *Buitrago* for appellant. E. *Campos del Toro*, Attorney General (R. A. *Gómez*, Prosecuting Attorney, and Luis *Negrón Fernández*, Assistant Prosecuting Attorney, on the brief), for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The District Attorney of Humacao brought an information against the appellant, charging him with the commission of murder on the person of José María Roig. In two other separate informations the appellant was charged with the unlawful carrying of a pistol, with which he killed Roig, and with having failed to register that firearm as required by Act No. 14 of 1936.

Upon being found guilty of voluntary manslaughter, carrying a weapon, and the failure to register said firearm, which cases had been submitted jointly, on the same evidence, the defendant appealed from the three judgments of conviction. The appellant has assigned 19 errors which we will examine and decide in the same order in which they are set forth in the briefs.

The first assignment relates to the admission and testimony of the medical expert regarding the wounds sustained by Carmelo Ortiz Cay, who was not the victim of the murder with which the appellant was charged. The latter urges that that evidence was neither necessary nor relevant to the decision of the case and that it was offered for the sole purpose of creating prejudice in the minds of the jurors against the accused, thereby violating his substantial rights.

Upon the expert witness being asked by the district attorney whether he had made an examination of the body of Carmelo Ortiz Cay, the defense objected, on the ground that

the case which was being tried concerned the death of Roig and not the wounds inflicted upon Ortiz. The district attorney replied that Ortiz's wounds were "part of the same transaction," that is, that Ortiz had been wounded during the ocurrence in which Roig lost his life. Counsel for the defense stated that he had no objection to any testimony to the effect that another person had been wounded but that he did object to the introduction of any expert testimony regarding the character of the wounds. The court admitted the testimony subject to the condition of its being connected in some way with the facts of the case at bar. The defense took an exception and then the witness testified regarding the character, location, direction, and importance of the two wounds received by Carmelo Ortiz.

The same question set up in the first assignment is raised in the second and third. The court, over the objection of the defense, permitted the medical witness to testify regarding the post-mortem examination made by him on the body of Antonio Torres Ortiz—a person other than the deceased in the murder case—and to describe the wounds received in the same occurrence by Florentino Ortiz.

Since Carmelo Ortiz and Florentino Ortiz were wounded and Antonio Torres Ortiz was killed in the same act or occurrence in which the alleged murder of José María Roig was committed, the evidence of those facts was admissible as part of the same transaction. It would indeed be impossible to narrate the facts relating to the killing of Roig without making reference to the fact that another person was killed and two others wounded in the same place, by the same person, and by means of the same weapon. See *People* v. *Souffront,* 30 P.R.R. 101; *People* v. *Philip,* 34 P.R.R. 619; *People* v. *López,* 42 P.R.R. 487; and *People* v. *Pierantoni,* 60 P.R.R. 13. The evidence regarding the character and direction of the wounds was neither relevant nor admissible. Nevertheless, it does not appear that the error

in admitting it has caused any prejudice to the defendant, nor that it is sufficient to justify the reversal sought.

 The lower court admitted in evidence a handwritten statement, made by the accused while he was detained in the Jail of Humacao, before Lieutenant Donnelly, Investigating Officer of the Military Police of the United States Army; and in connection with said statement it admitted the testimony of that officer, who is not familiar with the Spanish language. It is urged that the lower court erred in admitting the statement of the accused without the same having been properly identified and without it constituting a voluntary confession or admission incriminating the accused.

The transcript of the evidence shows that Lieutenant Donnelly, charged with the investigation of the cause of the death of Roig, who had been a soldier in active service, called on the accused and took with him as his clerk or interpreter Private Raúl Trujillo Santiago, who is perfectly familiar with the Spanish and English languages. Lieutenant Donnelly testified that when meeting the accused Millán he informed the latter of his position in the Army and that he was investigating the death of Private Roig; that before questioning the accused, he apprised the latter of his right not to make any statement and informed him that his silence would not be used against him, but that "if he spoke any statement which he should make incriminating him might be used against him"; that thereupon the accused, through the interpreter, narrated all his actions and alleged that what he stated was the truth and that he was willing to swear to those facts; that the interpreter Trujillo forthwith took the statement of the accused, asking him at the end of each sentence whether or not it was correct; that the only three incorrect statements were crossed out and the accused put his initials in the margin; and when the entire statement was finished the witness turned it over to the ac-

cused for him to read it, and that the accused then carefully read each page on the statement, signified his acceptance of it, verified it, by his oath, and signed it; and that before the accused signed it, the witness apprised him once more of his rights.

We are of the opinion that the statement of the accused admitted in evidence, was sufficiently identified by the officer who signed it, and who acknowledged the signatures of the accused and of the other persons who signed the document in his presence. The statement was made voluntarily by the accused, after having been informed of his right not to testify. Each of the pages of the statement was signed by the accused. The last paragraph of the statement reads thus: ''I wish to state that I have been warned of my constitutional right not to testify, and that I make this statement voluntarily in order to co-operate with the Army in its efforts to ascertain the truth.''

■■ The statement made by the accused is not really a confession nor an admission of guilt. On the contrary, the accused stated that he was in his establishment, throwing out the inquisitive persons who gathered there when he heard the ''shots coming from Muñoz Rivera Street.'' His statement is nothing else than what is known as an ''exculpatory statement,'' through which a person tries to protect himself by declaring that he had no participation in the criminal occurrence under investigation. The statement was admissible, and the court was not bound to instruct the jury that the declarations of the accused should be considered as true unless they were refuted. Recently we suggested and we now hold that the *dictum* to the contrary made in *People* v. *Sánchez*, 55 P.R.R. 342, 360, was erroneous and that ''exculpatory matter in a confession is to be treated like any other evidence with the jury at liberty to believe or reject it.'' *People* v. *Muñiz*, 65 P.R.R. 928.

240

The appellant complains of his not having been permitted to ask Carmelo Ortiz Cay, a witness for the prosecution, whether he had pending in the District Court of Humacao certain informations against him for felonies which arose from the same facts involved in the present case, and for other offenses subsequently committed. The purpose of those questions was, as alleged, to uncover the prejudice, partiality, interest, and moral depravity of the witness.

On cross-examination by the defense, the witness stated that he and the accused were friends, from the same town, and had never had any quarrel. It was then that counsel for the defense asked him whether he had any prosecution pending by reason of the same occurrence. This question was objected to and the court sustained the objection raised by the district attorney. The defense then asked the witness whether he had been convicted of any felony and the witness answered in the negative.

That cross-examination, we think, was permissible in order to establish any interest which the witness might have in testifying the way he did. This court, in *People* v. *Ramírez de Arellano,* 25 P.R.R. 243, laid down the rule that it is not permissible to ask a witness whether a prosecution has been begun against him; and that until a person is convicted there is a presumption of innocence in his favor, and the existence of a prosecution does not tend to impeach him. This doctrine has not been overruled by the decision in *People* v. *Bermúdez,* 39 P.R.R. 745, as the questions asked in both cases are quite different. The questions asked in the *Bermúdez* case tended to establish a specific act personally performed by the accused Jenaro Bermúdez against the witness for the prosecution, namely, that the accused had on several occasions filed criminal complaints against the witness for the commission of certain offenses. In other words, the witness was asked regarding facts prejudicial to

him which had been performed by the accused and which logically tended to .show the existence of a motive for bias or partiality on the part of the witness. In the instant case, the defense sought to cross-examine the witness Carmelo Ortiz Cay as to whether or not he had been prosecuted by reason of the occurrence which gave rise to the prosecution against Millán, or of other subsequent events. The doctrine laid down in *People* v. *Ramírez de Arellano, supra,* is that questions tending to show that the witness is subject to criminal prosecution are not admissible in evidence. The one established by *People* v. *Bermúdez, supra,* is that a witness may be asked whether he has been denounced by the accused for the commission of any offense in order to establish the existence of feelings of hostility between the witness and the accused which might serve as a basis to impeach the testimony of said witness. The lower court should have permitted the question put to the witness in the instant case, but since it does not appear that its exclusion caused any prejudice to the rights of the accused, the error committed does not justify the reversal sought.

▪ The appellant complains of the action of the court *a quo* in not permitting that the witnesses for the prosecution, Antonio López and Carmelo Ortiz Cay, and the witness for the defense, policeman Vizcarrondo, be asked, on cross-examination and direct examination, respectively, some questions tending to show that several hours before Roig was killed the latter and his companions Antonio Torres Ortiz and Carmelo Ortiz Cay, were intoxicated and had assumed an aggresive and dangerous attitude against other persons and property in general.

The record of this case fails to show that the accused took any exception to the ruling of the court denying the admission of the questions asked to the witness Antonio López on cross-examination regarding this particular. It has been the invariable holding of this court that a ruling

to which no exception has been taken must be deemed accepted and it can not therefore be a ground for reversal unless it constitutes such a fundamental error—which does not happen in this case—that it would defeat the ends of justice.

As to the testimony of the witness for the defense, policeman Vizcarrondo, it appears from the transcript of the evidence that the lower court did not allow the witness to testify regarding previous differences which had existed between him and Roig and the latter's companions. The trial court may refuse to permit a witness to testify regarding facts which in no way affect the crime committed. Any altercation which might have occurred between the deceased, José María Roig, and his companions on the one hand and policeman Vizcarrondo on the other, at a time and place other than the ones involved in the occurrence giving rise to the prosecution, could in no way affect the crime charged against the accused. What gave rise to the action taken by the accused in this case, according to his theory, were not such previous differences, if any, between policeman Vizcarrondo and Roig and the latter's friends. What is inferred from the theory of the defense is that the accused Millán killed Roig because he thought that the life of policeman Vizcarrondo was endangered, without taking into consideration the differences above referred to. A similar question was decided by this court in *People* v. *Sarria*, 57 P.R.R. 865, 873, and *People* v. *Garay*, 64 P.R.R. 101, 103.

The appellant urges that the lower court erred in admitting, over repeated objections on the part of the defendant, the questions put by the district attorney to policeman Vizcarrondo in order to impeach the latter's veracity, taking as a basis a written statement made before the district attorney in the course of the preliminary examination under the pretext of refreshing the memory of the

witness, and refusing to exhibit or show said statement to the witness or to the defense before asking those questions.

An examination of the record of this case shows that the error assigned was not committed, for it appears that when the witness testified that the only question put to him by the district attorney in the preliminary examination was whether he thought that the accused Millán had killed Roig unnecessarily, the district attorney sought to impeach the veracity of the witness and showed the former statement to the witness and also turned it over to the defense counsel in order that the latter might read it. After the witness had rectified his previous assertion by stating that he had been asked several other questions, the district attorney abandoned his impeachment of the witness, as he considered it unnecessary. Afterward, when the district attorney asked the witness whether at the time the latter made the sworn statement before the district attorney two affidavits previously made by the witness before other officials were read out to him, the defense objected on the ground that the affidavits should first be shown to the witness. In view of that objection, the district attorney withdrew his question. A similar objection was subsequently made by counsel for the defense when the district attorney asked the witness regarding the number of affidavits made by him in the preliminary investigation. It is manifest that the question thus asked did not tend to impeach the veracity of the witness on the ground that he had made previous statements in conflict with his present testimony. Since the question put by the district attorney did not have the scope of impeaching the veracity of the witness, § 245 of the Code of Criminal Procedure is inapplicable. Nevertheless, assuming that the assigned error existed because of a failure to comply with the provisions of said § 245, the same would be insufficient to justify a reversal of the judgment rendered by the lower court. See *People* v. *Lebrón*, 61 P.R.R. 634.

9, 10, 12, 13, 16, and 18. Each and all of these assignments refer to certain errors alleged to have been committed by the lower court in its instructions to the jury.

The record of the case fails to show that the appellant took any specific exception to the instructions of the court involved in said assignments, nor does it appear that he made any request for instructions on the particulars in question so as to give the court *a quo* an opportunity to correct any error or to supply any omission made in giving its instructions to the jury. This being so, it is not necessary for us to consider the errors thus assigned, for if the defendant had an opportunity to challenge the instructions delivered by the court to the jury but failed to do so, he thereby waived any error contained in said instructions. It does not appear from the record, either, that the accused requested any special instructions on the particulars covered by the above-mentioned assignments. See *People* v. *Ramos,* 36 P.R.R. 739; *People* v. *Figueroa,* 26 P.R.R. 687; *People* v. *Ramírez de Arellano,* 25 P.R.R. 243; *People* v. *García,* 64 P.R.R. 278, 280; *People* v. *Garay,* 64 P.R.R. 101, 104; *People* v. *Díaz,* 63 P.R.R. 948, 954; and *People* v. *Valentín,* 63 P.R.R. 756, 762.

In his argument on assignments 9 and 10, the appellant urges that the lower court invaded the province of the jury by stating in its instructions that policeman Vizcarrondo had attempted to arrest Roig and his companions, thus assuming as an established fact that said policeman had tried to make the arrest without any justification whatever, notwithstanding the conflicting character of the evidence on this particular, and invading the functions of the jury as sole trier of the facts and of the weighing of the evidence. It is not true that the evidence on this particular is conflicting. The acts performed by policeman Vizcarrondo in interfering with Roig and his companions are more eloquent than the words used by the policeman him-

self when testifying as a witness for the defense. A careful examination of this evidence leads us to the unavoidable conclusion that the policeman sought to arrest Roig and his companions, not because they had observed any offensive and tumultuous conduct or committed any other unlawful act in his presence justifying an arrest by that police officer, but the attempt was a direct result of the demand or suggestion made by the accused to the policeman by reason of the damages caused to said accused in his bar shortly before and in the absence of said policeman. All this is shown by the evidence for the prosecution as well as by that for the defendant, and hence there was no conflict on this point.

In passing upon assignments 9 and 10, we have incidentally considered assignment No. 11, as the latter is closely connected with the former. Referring now specifically to the latter assignment, we should add that the lower court did not err in denying the special instruction requested by the defense to the effect that policeman Vizcarrondo was entitled to arrest Roig and his companions without a warrant if the latter in his presence had committed a breach of the peace, observed an offensive and tumultuous conduct, and were found drunk in a public highway. We have already stated that the evidence fails to show the commission of any offense by Roig and his companions in the presence of the policeman, and that what induced the policeman to attempt an arrest were the events which occurred in his absence in the Venecia Bar of the town of Juncos. Hence, it was not proper to instruct the jury on this point.

As to assignment No. 16, which relates to supposedly erroneous instructions on self-defense, we should further state that no exception was taken nor any supplementary instruction requested, and that the instructions given by the court correctly deal with the matter of self-defense and are in accord with the law, in their form as well

as in their substance. See *People* v. *Valentín,* 63 P.R.R. 756, and *People* v. *Guzmán,* 61 P.R.R. 611.

To what we have already said we add regarding assignment No. 18, that the instructions delivered by the court to the jury correctly state the facts of this case and reasonably conform to the law. See *People* v. *Valentín, supra.*

 The appellant urges that the lower court erred in refusing to admit in evidence the blotter (*Libro de Novedades*) kept at the headquarters of the Insular Police in Juncos, wherein certain entries were made relating to the occurrence which gave rise to the prosecution in this case. He maintains that this was evidence voluntarily suppressed, inasmuch as the district attorney had caused to be issued a subpoena to the Chief of the Insular Police at Juncos to present said blotter in order to introduce it in evidence. We think that there was no suppression of evidence, for what the blotter contained was a report submitted by policeman Vizcarrondo himself, who in his testimony in this case gave ample details of the events that took place on the day of the occurrence. The introduction of said blotter as evidence, by either party, would have been proper if an attempt had been made to impeach the testimony of the witness.

 The appellant urges that the lower court erred in denying the instructions requested by the defendant in the sense that it was incumbent on the jury to determine whether or not the sworn statement made by the accused before the military authorities was voluntary, and to disregard it if the jury thought that it was not a voluntary statement.

Regarding the said statement, we have already decided that it is nothing more than what is known as an "exculpatory statement," through which a person tries to protect himself by declaring that he had no share in the criminal act under investigation. This does not constitute a confession or an admission on the part of the accused; neverthe-

less, the lower court, in its instructions to the jury informed the latter that it was incumbent upon them to determine whether or not the statement had been made voluntarily, and to give it the probative force which they might deem proper. This being so, the error assigned was not committed.

 The appellant maintains that the verdict of voluntary manslaughter is contrary to law and against the weight of the evidence.

For a better understanding of this assignment, we state below, in brief, the evidence which the jurors who tried this case had before them.

The evidence for the prosecution showed that on the day of the occurrence the deceased, José María Roig, together with Antonio Torres Ortiz and Carmelo Ortiz Cay, entered the Venecia Bar, in the town of Juncos, took some drinks and in the presence of the accused, who was the manager or person in charge of the saloon, broke several glasses and bottles and Roig broke a showcase. As soon as those three persons left the saloon, the defendant went to his home and while on his way he met policeman Vizcarrondo to whom he informed of what had happened. The defendant returned to the establishment, armed with a pistol. While policeman Vizcarrondo and the defendant were in the saloon, Roig and his companions again passed by, on their way to another eating place. The defendant pointed them out to policeman Vizcarrondo as the persons who had done the damage in his establishment, and then Vizcarrondo approached them and told them that they were under arrest and to come with him to the police station. Upon the refusal of Roig and his companions to submit to arrest, policeman Vizcarrondo made a move as if to pull out his revolver and then Ortiz Cay grabbed his hand and grappled with him, and they both struggled for sometime while Roig and Torres approached them. When Torres separated from the two men who were

struggling, the defendant took out his pistol and shot at Torres, wounding him. After Torres fell to the ground, Ortiz Cay continued his struggle with Vizcarrondo and they both entered a vegetable store nearby, where Roig also entered and fought with the policeman; that the defendant thereupon approached the entrance to the store and then withdrew at the suggestion of somebody; that afterward he returned to the doorsteps of the store and from there fired a shot at Roig which killed the latter instantly, and then fired two shots at Ortiz Cay, who was still struggling with the policeman. As a result of those shots Ortiz Cay received two bullet wounds.

The evidence for the defense tended to show that policeman Vizcarrondo had been attacked by Roig and his companions and that the defendant Millán acted in defense of said policeman in order to prevent the latter from being killed.

The jury had before them the evidence which has just been summarized and it resolved the conflict in the evidence against the defendant. The evidence of the prosecution supports the verdict rendered in this case and, as no manifest error, prejudice, or partiality in the weighing of the evidence has been shown, this court should not interfere with the judgment rendered. See *People* v. *Valentín, supra; People* v. *Rodríguez,* 62 P.R.R. 749, 753; *People* v. *Garay, supra,* and *People* v. *García, supra.*

The appellant urges that the lower court erred in denying the motion for a new trial. Since the record fails to show that any appeal has been taken from the order of the lower court denying that motion, this court lacks jurisdiction to consider the alleged error. See *People* v. *Ortiz,* 62 P.R.R. 246; *People* v. *Lebrón,* 61 P.R.R. 634; and *People* v. *Mediavilla,* 54 P.R.R. 538.

Inasmuch as the errors assigned in the murder case (felony) have not been committed, and since it further ap-

pears that each and all of the elements of the offenses of carrying a weapon and failing to register the firearm have been proved, the judgments rendered by the lower court in these cases should be affirmed.

Mr. Justice De Jesús and Mr. Justice Córdova did not participate herein.